# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNDA JACK, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation and DOES 1-50, Inclusive<br><br>Defendant. | CASE NO. 3:09-cv-1683-MMA(JMA)<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>[Doc. No. 43]<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES**<br><br>[Doc. No. 44] |

Currently before the Court are Plaintiff's unopposed motion for final approval of settlement [Doc. No. 43] and Plaintiff's unopposed motion for attorney fees, litigation expense award, approval of administrative expenses, an enhancement award for the named plaintiff and PAGA penalties [Doc. No. 44].

## I. BACKGROUND

Plaintiff Shawnda Jack ("Plaintiff") commenced the above-referenced wage and hour class action ("Action") against Defendant Hartford Fire Insurance Company ("Defendant") on August 3, 2009, and filed the operative First Amended Complaint ("FAC") on February 22, 2010. Plaintiff worked as a customer care representative for Defendant from August 2004 to February 2009.

Plaintiff's FAC alleges Defendant's employment practices violated state and federal law, including the Fair Labor Standards Act ("FLSA") of 1938, the California Wage Orders, the California Business & Professions Code, the California Labor Code, and California's Private Attorneys General Act ("PAGA") of 2004.

The parties engaged in extensive discovery and then participated in mediation in front of Robert Kaplan, Esq. The parties ultimately reached a settlement. On December 15, 2010, the parties filed a joint motion for preliminary approval of settlement. [Doc. No. 38.] On January 20, 2011, the Court granted preliminary approval of the settlement ("Preliminary Approval Order") [Doc. No. 40], appointing Class Counsel and provisionally certifying the Class for settlement purposes only, defined as:

> Any person who worked for Hartford Fire Insurance Company in a non-exempt position in California at any time between August 4, 2005 and January 20, 2011.

After the preliminary approval of the settlement, the claims administrator sent via first-class U.S. mail to all Class Members a Notice Form, Claim Form, and Request for Exclusion Form. The claims administrator performed an address trace prior to the initial mailing, and again upon receipt of returned/undeliverable mail. The claims administrator also traced and re-sent returned mailings; the obligation to trace and resend ceased after the two mailings or 25 days after the initial mailing. Heirs of Class Members were entitled to participate, but notices were only sent to Class Members' last known addresses.

Class Members had 45 days from the initial mailing to exercise their option to: (1) object to the settlement; (2) opt out of the class; (3) submit a claim; (4) not respond and be bound to the terms of the Agreement, but not recover or be entitled to any portion of the settlement. The notice informed Class Members that by submitting a claim they agreed to release their California and federal claims; if they did not timely submit opt-out forms, their California-based claims would be released.

On April 24, 2011, Plaintiff filed the present motions for final approval of settlement and for attorneys' fees. As set forth in the parties' joint stipulation of class action settlement and

release of class action claims ("Stipulation of Settlement"), Defendant established a settlement fund of $1,200,000, allocated as follows: (1) net settlement amount, aka "Payout Fund" $801,100; (2) attorneys' fees $360,000; (3) cost reimbursement $15,000; (4) enhancement award to Class Representative $2,500; (5) claims administration $18,400; and (6) penalties pursuant to Private Attorneys General Act of 2004 $3,000.  On June 3, 2011, the parties submitted supplemental briefing in support of the motions. [Doc. No. 50.]

On October 3, 2011, the parties appeared before the Court for a final approval hearing. Plaintiff was represented by William Sullivan of Sullivan & Christiani, LLC.  Defendant was represented by David Dow of Littler Mendelson.  No individual appeared at the hearing to object to the proposed settlement.  At the conclusion of the hearing, the Court took the motions under submission.

After due consideration of the evidence and arguments presented to the Court in the parties' moving papers as well as at the October 3, 2011 hearing, the Court concludes that good cause supports final approval of the proposed settlement.  Therefore, for the reasons set forth below, the Court **GRANTS** final approval of the settlement and **GRANTS** the motion for attorneys' fees, subject to the Court's revision of Plaintiff's proposed fee award.  Additionally, the Court **GRANTS** Plaintiffs' motion for costs, enhancements for the Class Representative, claims administration expenses and PAGA penalties.

## II. DISCUSSION

### A. Collective Class Action under FLSA, 29 U.S.C. § 216(b)

Under the Fair Labor Standards Act ("FLSA"), an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay overtime wages.  29 U.S.C. § 216(b); *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 535-36 (N.D. Cal. 2007).  The FLSA limits participation in a collective action to only those parties that 'opt-in' to the suit. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

1   The standards for a collective action are set forth in Federal Rule of Civil Procedure 23 ("Rule 23"). Courts have found that collective action is proper under a two-part test. Under the first part, a court must determine whether the proposed class should be notified of the action and whether the putative Class Members were subject to a single illegal policy, plan or decision. *Murillo v. Pacific Gas & Elec. Co.*, 2010 WL 2889728 * 2 (C.D. Cal. 2010) (internal marks and citation omitted). The second part usually occurs after discovery is complete, at which time the defendants may move to decertify the class. *Id.* In this step, the court makes a factual determination about whether the plaintiffs are similarly situated by weighing such factors as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations." *Misra v. Decision One Mortg. Co.*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008)

Here, the notice provides that if a Class Member does not timely submit opt-out forms, the California-based claims are released [*Hanson Dec.*, Doc 43-3, P. 7-8, § III, ¶ 1]. However, if a Class Member returns a valid Claim Form (thereby opting-in), the Class Member releases both California-based and FLSA claims [*Id.* at P. 7-8, § III, ¶ 2]. Accordingly, the notice complies with the FLSA requirements by requiring the Class Members to affirmatively consent to releasing FLSA claims through the opt-in procedure.

The requirement that the putative Class Members were subject to a single illegal policy, plan, or decision is also satisfied. Plaintiff alleges that Defendant violated the FLSA by failing to pay and properly calculate overtime to Plaintiff and all other employees similarly situated. Defendant admits that it relied solely upon FLSA members' timesheets and ignored several more accurate time records such as phone log-in reports and computer log-in/out reports. In addition, Defendant relied on time schedules–as opposed to actual work-time–to calculate compensable time. According to Plaintiff, these policies and practices led to inaccurate compensation of Defendant's employees. Defendants' failure to take into account the more accurate time records that were readily available constitutes a single illegal policy, to which all Class Members were

1 subjected.

2     Finally, because this case settled prior to the close of discovery, Defendant did not move to decertify the Class. *See Misra v. Decision One Mortg. Co.*, 2009 U.S. Dist. LEXIS 119468, 2009 WL 4581276, at *4 (C.D. Cal. April 13, 2009). Since the analysis required by the second step, including issues of factual similarities between the employees and their claims, largely overlaps with class certification analysis under Rule 23(a) and (b), the Court now considers the propriety of class certification under Rule 23. *See id.*

### B. Certification of the Settlement Class under Rule 23(a) and (b)

    Rule 23(e) requires that a court approve a class action settlement. "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). A court must confirm the propriety of certification by assessing the following Rule 23(a) prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiffs claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citing FED. R. CIV. P. 23(a)). Under Rule 23(b)(3), the Court also must consider whether common questions of law and fact predominate, as well as whether the class action offers a superior method of adjudicating the controversy. FED. R. CIV. P. 23(b)(3).

    Plaintiff adequately demonstrates class treatment is appropriate under Rule 23(a). The numerosity requirement is met because the settlement encompasses 2,591 Class Members. [*Hanson Dec.*, Doc. No. 44-4, ¶ 14.] The commonality requirement is met because common questions of law or fact exist (i.e., nonexempt employees allege they were not properly paid all regular and overtime wages, not properly paid for earned paid time off, not provided adequate meal and rest periods, not provided proper itemized wage statements, not timely paid all wages owed at end of employment). The typicality requirement is met because Plaintiff's claims are typical of other non-exempt employees who experienced the same working conditions, and

1  Defendant's payroll policies and practices uniformly applied to all non-exempt Class Members.
2  The adequacy requirement is met because there is no conflict of interest between Plaintiff and the
3  Class Members.

4  Furthermore, Plaintiff demonstrates the Rule 23(b)(3) requirements are also satisfied. The
5  parties agree that common questions predominate in this action. [*See P&A in Support of Mot. For*
6  *Prelim. Approval of Settlement*, p. 10.]  A class action is superior because common elements
7  among the individual claims exist, but the relatively small size of each Class Member's potential
8  claim would deter them from individually pursuing their claims.

### C. Fairness, Adequacy and Reasonableness of Proposed Settlement under Rule 23(e)

10  Courts require a higher standard of fairness when settlement takes place prior to class
11  certification to ensure Class Counsel and defendant have not colluded in settling the case. *Hanlon*
12  *v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Ultimately, "[t]he court's intrusion upon
13  what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must
14  be limited to the extent necessary to reach a reasoned judgment that the agreement is not the
15  product of fraud or overreaching by, or collusion between, the negotiating parties, and that the
16  settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for*
17  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

18  A court considers several factors in determining whether a proposed settlement is "fair,
19  adequate and reasonable" under Rule 23(e).  Such factors may include: (1) the strength of the case;
20  (2) the risk, expense, complexity, and likely duration of further litigation and the risk of
21  maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation,
22  discovery and research completed); (4) the settlement amount; (5) the experience and views of
23  counsel; and (6) the reaction of the class to the proposed settlement. *Staton*, 327 F.3d at 959.  The
24  Court needs only consider some of these factors–namely, those designed to protect absentees. *See*
25  *Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (overruled in part on other grounds).

26  The Court concludes that the settlement is fair, adequate and reasonable.  The parties
27  decided to settle this action after assessing the claims and possible defenses.  The additional time

and expense of further litigation also weigh in favor of settlement. Furthermore, the proposed settlement was reached after completing extensive discovery. Thus, Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the monetary results that could be obtained through further litigation. The Court also notes that the settlement was the result of an arms-length negotiation before a neutral and detached mediator. [*William Sullivan Dec.*, Doc. No. 38-2, ¶ 10.]

Finally, the Court finds that the settlement in this case of $1,200,000 represents a substantial benefit for the Class because each Class Member will receive a payment on his or her claim. The average payout to Class Members is projected to be $391.78 per Class Member. The highest payout claimed is $791.27. [*P&A in Support of Settlement,* p. 10.] The Court also notes that the Class Members' reaction to the proposed settlement has been favorable. In fact, no Class Member has filed an objection to the proposed settlement. [*Id.* at p. 13, ln. 16.]

Based on the foregoing, the Court concludes that the settlement satisfies the FLSA collective action requirements, the Rule 23(a) and (b) class certification requirements, and the Rule 23(e) requirements for class action settlement. As such, the Court hereby **GRANTS** final approval of the settlement.

### III. MOTION FOR ATTORNEY FEES, COSTS, ENHANCEMENT AWARD AND PAGA PENALTY

Also before the Court is Plaintiffs' unopposed motion for attorney fees, litigation expense award, approval of administrative expenses, an enhancement award for the named plaintiff, and PAGA penalties [Doc. No. 44].

*A. Award of Attorneys' Fees*

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Under the FLSA, an award of attorneys' fees and court costs is mandatory. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.")

"In common fund cases such as this, [the Ninth Circuit has] established twenty-five percent (25%) of the common fund as the benchmark award for attorney fees. This benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (internal marks and citations omitted). "Length and complexity of litigation and degree of success could be considered relevant factors" in determining whether to adjust the benchmark award. *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1127 (9th Cir. 2002). If the court determines a benchmark percentage adjustment is warranted, the Ninth Circuit "caution[s] that it must be made clear by the district court how it arrives at the figure ultimately awarded." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). While no factor is dispositive, the following factors are relevant to determining whether the percentage award is appropriate: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *In re Omnivision Technologies, Inc.*, 2007 WL 4293467 *9 (N.D. Cal. 2007), *citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Class Counsel requests an award of attorneys' fees in the amount of $360,000, which represents thirty percent (30%) of the settlement. Upon due consideration, the Court concludes that this case does not warrant an upward adjustment above the twenty-five percent benchmark. There is no evidence to support Class Counsel's claims that the results in this case were exceptional or that this case is extraordinarily factually or legally complex. Although Class Counsel performed competent work in conducting discovery and negotiating settlement, the circumstances do not indicate any special justification for an upward adjustment to thirty percent. Accordingly, the Court approves an award of attorneys' fees of $300,000 (25% of the $1,200,000 settlement).

///

///

### B. Litigation and Claims Administration Costs

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Here, Class Counsel seeks a total reimbursement of $15,000 for expenses, including filing fees, deposition fees, mediation fees, legal research fees, copies, fax transmittals, and travel and meal feels in connection with the case.

In addition, Class Counsel requests $18,400 in claims administration expenses. A third-party claims administrator, CAC Services Group, LLC, was hired to mail notice to Class Members and distribute payments. Class Counsel asserts that CAC Services Group, LLC performed its functions diligently, and the declaration of Matthew P. Hanson, the claims administrator, supports this claim.

Accordingly, the Court approves reimbursement for litigation expenses totaling $15,000, and approves administrative expenses in the amount of $18,400.

### C. Enhancement Award for Class Representative

In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (internal marks and citations omitted).

Here, the settlement provides an enhancement award to the Class Representative, Shawnda Jack, of $2,500. Plaintiff provided valuable information and documents from her employment at Hartford, which were instrumental in Class Counsel's understanding of the case. Plaintiff spent more than sixty hours helping prosecute the matter, including meeting with counsel, reviewing documents, clarifying dates and policies, reviewing discovery responses and document production, confirming the truthfulness of claims her counsel asserted, and offering input into the defenses alleged by Hartford [Doc 44-2, ¶¶ 10-13]. As such, Plaintiff performed a vital role in this

litigation, and an enhancement award of $2,500 constitutes fair and reasonable compensation.

Therefore, the Court approves the enhancement award of $2,500 to Class Representative Plaintiff Shawnda Jack.

### D. PAGA Penalties

Defendant's response to Plaintiff's allegations has virtually negated any "willful" violations of the California Labor Code, including, but not limited to, section 203, which imposes a waiting-time penalty where an employer willfully fails to pay wages to an employee who is discharged or quits. When allegations regarding improper accounting for the amount of time employees' worked were brought to Defendant's attention, Defendant promptly changed its policy to have its managers meaningfully review its employees' timesheets for errors, and crosscheck them with the time reports available to the manager. Nonetheless, the parties have agreed to allocate $3,000 for PAGA penalties, so that the Labor workforce and development agency can continue to investigate and prosecute California Labor Code violations. Therefore, the Court hereby approves PAGA penalties in the amount of $3,000.

## III. ORDER

For the reasons outlined above, the Court **GRANTS** the parties' joint motion for final approval of class action settlement [Doc. No. 43] and **GRANTS** Plaintiffs' unopposed motion for attorneys' fees, litigation expense award, approval of administrative expenses, an enhancement award for the named plaintiff, and PAGA penalties [Doc. No. 44]. The Court approves the terms of the parties' proposed final settlement, subject to the terms and conditions stated herein and set forth below. Accordingly,

**IT IS HEREBY ORDERED THAT**:

1. All terms used herein shall have the same meaning as defined in the Stipulation of Settlement.

2. Consistent with the definitions provided in the Stipulation of Settlement, the terms "Class" and "Class Members" include: "Any person who worked for Hartford Fire Insurance Company in a non-exempt position in California at any time between August 4, 2005 and January

1  20, 2011." For purposes of the Settlement and this Final Order, "Defendant" and/or "Released
2  Parties" include Hartford Fire Insurance Company and its present and former parent companies,
3  subsidiaries, related or affiliated companies, including but not limited to The Hartford Financial
4  Services Group, Inc., Specialty Risk Services, LLC, and any parent, subsidiary, and related
5  companies, joint ventures, partners, shareholders, officers, directors, employees, agents, attorneys,
6  insurers, successors and assigns, and any individual or entity which could be jointly liable with
7  Defendant.

8      3.    This Court has jurisdiction over the subject matter of this Action and over all
9  Parties to this Action, including all Class Members.

10      4.    Distribution of the Notice of Proposed Class Action Settlement and Final Fairness
11  and Approval Hearing, Claim Form and Request for Exclusion Form directed to the Class
12  Members as set forth in the Stipulation of Settlement and the other matters set forth therein, has
13  been completed in conformity with the Preliminary Approval Order, including individual notice to
14  all Class Members who could be identified through reasonable effort, and constitutes the best
15  notice practicable under the circumstances. The Notice provided due and adequate notice of the
16  proceedings and of the matters set forth therein, including the proposed Settlement set forth in the
17  Stipulation of Settlement, to all persons entitled to such Notice, and the Notice fully satisfied the
18  requirements of due process. All Class Members and all Released Claims and Released Federal
19  Claims are covered by and included with the Settlement and this Final Order.

20      5.    The Court hereby finds the Settlement was entered into in good faith, and further
21  finds that the Settlement is fair, reasonable and adequate, and that Plaintiff has satisfied the
22  standards and applicable requirements for final approval of this class action Settlement under
23  California and federal law, including the provisions of Federal Rule of Civil Procedure 23.

24      6.    The Court hereby approves the Settlement as set forth in the Stipulation of
25  Settlement, and finds that the Settlement is, in all respects, fair, adequate and reasonable, and
26  directs the Parties to effectuate the Settlement according to the terms outlined in the Stipulation of
27  Settlement. The Court finds that the Settlement has been reached as a result of intensive, serious
28

and non-collusive arms length negotiations. The Court also finds that the Class is properly certified for settlement purposes only.

7. The Court hereby finds the One Million Two Hundred Thousand Dollars ($1,200,000.00) Gross Settlement Amount provided for under the Settlement to be fair and reasonable.

8. The Court **ORDERS** the calculations and the payments to be made and administered from the Gross Settlement Amount in accordance with the terms of the Stipulation of Settlement to each Participating Class Member who submitted a timely and valid claim in accordance with the Stipulation of Settlement.

9. The Court hereby confirms Sullivan & Christiani, LLC as Class Counsel.

10. Pursuant to the terms of the Stipulation of Settlement, and the authorities, evidence and argument submitted by Class Counsel, the Court hereby **AWARDS** Class Counsel attorneys' fees and costs in the amount of three hundred fifteen thousand dollars ($315,000.00), to be paid from the Maximum Settlement Payout, as final payment for and complete satisfaction of any and all attorneys' fees and costs incurred by and/or owed to Class Counsel.

11. The Court also hereby approves as Class Representative, and **ORDERS** payment to, the named Plaintiff, Shawnda Jack, for her services as a Class Representative the sum of two thousand five hundred dollars ($2,500.00), to be paid from the Maximum Settlement Payout and as provided by the terms of the Stipulation of Settlement.

12. The Court also hereby **ORDERS** payment of the sum of three thousand dollars ($3,000.00) to the California Labor Workforce Development Agency, to be paid from the Maximum Settlement Amount and as provided by the terms of the Stipulation of Settlement.

13. The Court also hereby **ORDERS** the payment of the sum of eighteen thousand four hundred dollars ($18,400.00) to the CAC Services Group, LLC, to be paid from the Maximum Settlement Payout and as provided by the terms of the Stipulation of Settlement, for its services as Claims Administrator.

14. As of the date of this Final Order, each and every Released Claim of each Class

1  Member and Released Federal Claim of each Participating Class Member is and shall be deemed
2  to be conclusively released as against the Released Parties.  All Class Members as of the date of
3  this Final Order and the Effective Date are hereby forever barred and enjoined from prosecuting
4  the Released Claims (as defined in the Stipulation of Settlement and as set forth below) against the
5  Released Parties.  In addition, all Participating Class Members as of the date of this Final Order
6  and the Effective Date are hereby forever barred and enjoined from prosecuting the Released
7  Federal Claims (as defined in the Stipulation of Settlement and as set forth below) against the
8  Released Parties.

9       15.    As of the date of this Final Order, the Settlement Class, and each Class Member
10 who has not submitted a valid Request for Exclusion Form, fully releases and discharges the
11 Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, costs,
12 expenses, attorneys' fees, damages, causes of action and allegations of any nature, known or
13 unknown, suspected or unsuspected, that were alleged or that could have been alleged, in the
14 Action, and that arise or could have arisen out of the facts alleged in the Action, including the
15 claims brought and the claims which could have been brought in the Action, including, but not
16 limited to claims that arise out of any alleged violations of the wage and hour provisions of the
17 California Labor Code or the California Wage Orders, or any other wage and hour provisions of
18 any other state law, regulation or statute, including, but not limited to claims for the failure to
19 provide payment for all hours worked, the failure to properly calculate the regular rate of pay, the
20 failure to provide meal periods, the failure to provide rest periods, the failure to provide accurate
21 pay stubs and itemized wage statements, the failure to keep and maintain accurate payroll records,
22 the failure to properly administer paid time off, the rounding of employee time records and wage
23 rates, the administration of make-up time, the failure to timely pay all wages owed to terminated
24 and resigned employees, the failure to pay any penalties, claims for unfair, unlawful, and
25 fraudulent business practices under the California Business and Professions Code section 17200 et
26 seq., claims for penalties arising under PAGA, and/or related violations of the California Labor
27 Code or Wage Orders, and any other claims whatsoever alleged, or that could have been alleged,
28

in the Action, including without limitation all claims for restitution and other equitable relief, injunctive relief, statutory damages, liquidated damages, exemplary damages, punitive damages, waiting-time penalties, or penalties of any nature whatsoever, arising from employment by Defendant and/or the Released Parties, and/or any of their predecessors in interest from August 4, 2005 up to and including January 20, 2011 (collectively, "Released Claims").  This Release and the Released Claims are specifically intended to cover and release any and all claims, including any and all wage and hour claims as set forth above, that arose, or could have arisen during the Class Period.

16. As of the date of this Final Order, in addition to releasing the Released Parties from the Released Claims as described above, each Settlement Class Member who has submitted a valid Claim Form ("Participating Class Member"), shall fully release and discharge the Released Parties from any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, causes of action and allegations of any nature, known or unknown, suspected or unsuspected, that were alleged or that could have been alleged, in the Action, and that arise or could have arisen out of the facts alleged in the Action, including the claims brought and the claims which could have been brought in the Action, including, but not limited to claims that arise out of any alleged violations of the Fair Labor Standards Act of 1938, including, but not limited to claims for the failure to provide payment for all hours worked, the failure to properly calculate the regular rate of pay, the failure to properly administer paid time off, the rounding of employee time records and wage rates, the administration of make-up time, and any other claims whatsoever alleged, or that could have been alleged, in the Action under federal law, including without limitation all claims for restitution and other equitable relief, injunctive relief, statutory damages, liquidated damages, exemplary damages, punitive damages, penalties of any nature whatsoever, arising from employment by Defendant and/or the Released Parties, and/or any of their predecessors in interest from August 4, 2005 up to and including January 20, 2011 (collectively "Released Federal Claims").  This Release and the Released Federal Claims are specifically intended to cover and release any and all claims, including any and all wage and hour

1  claims, that arose, or could have arisen during the Class Period.

2      17.    The Released Claims and Released Federal Claims include any unknown and
3  unsuspected claims arising out of or in connection with the claims alleged in the Action and any
4  claims based on the same operative facts that the Class Members and Participating Class Members
5  do not know or suspect to exist in their favor at the time of this release, which, if known by them,
6  might have affected their settlement with, and release of, the Released Parties or might have
7  affected their decision not to object to this Settlement.  With respect to the Released Claims and
8  Released Federal Claims, the Class Members and Participating Class Members have expressly
9  waived and relinquished to the fullest extent permitted by law, the provisions, rights and benefits
10  of Section 1542 of the California Civil Code, or any other similar provision under state and federal
11  law.

12      18.    Neither the Settlement nor any of the terms set forth in the Stipulation of Settlement
13  are admissions by Defendant, or any of the other Released Parties, nor is this Final Order a finding
14  of the validity of any claims in the Action, or of any wrongdoing by Defendant, or any of the other
15  Released Parties.

16      19.    The Court hereby **ORDERS** the entry of final judgment and **DISMISSES** the
17  Action.  The claims and causes of action in Plaintiffs' First Amended Complaint alleged under
18  federal law on behalf of putative class members employed outside of California are dismissed
19  without prejudice.  Except as so excluded, the remaining claims and cause of action and the
20  remainder of Plaintiff's First Amended Complaint are dismissed with prejudice as to all Parties,
21  including all Class Members and Participating Class Members.

22      20.    Without affecting the finality of this Final Order in any way, the Court hereby
23  retains continuing jurisdiction over the interpretation, implementation and enforcement of the
24  Settlement and all orders entered in connection therewith.

25      21.    Neither this Final Order nor the Stipulation of Settlement shall be construed as an
26  admission by Defendant or finding by the Court regarding the propriety of the certification of any
27  class in this or any other matter other than for purposes of settlement of this Litigation.

28

22. If the Settlement does not become final and effective in accordance with the terms of the Stipulation of Settlement, then this Final Order and all orders entered in connection herewith shall be rendered null and void and shall be vacated.

**IT IS SO ORDERED.**

**DATED: October 13, 2011**

**Hon. Michael M. Anello**
**United States District Judge**